# EXHIBIT 1

DocuSign Envelope ID: EA8B382F348A7-417F-97A6-283546B75E8E

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by among Plaintiff Aileen Culpepper ("Culpepper") and Linda Marie Alex, Aileen Berrios-Ramos, Michelle Bertolino, Mary Ellen Cardello, Matthew L. Ericksen, Rhonda Dee Gomme, Cheryl L. Izzo, Suzanne Kelly, Brenda Lambo, Deborah Levesque, Florence Crinejo Marshalek, Marilynn Martin, Andrea Morgan, Natalia A. Ortiz, Nancy L. Reilly, Yamil Rivera, Sarena Salmeri, Michael Weed and Patricia Wilson (collectively, "the Opt-in Plaintiffs")(Culpepper and the Opt-in Plaintiffs collectively referred to herein as "Plaintiffs"), and Bank of America, N.A. ("Defendant").

## RECITALS

WHEREAS, Culpepper filed suit in *Culpepper v. Bank of America, N.A.* (Civil Action No. 3:17-cv-00264-VAB)("the Lawsuit"), in which she asserted individual, and collective and class action claims against Defendant for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Connecticut Minimum Wage Act, Conn. Gen. Stat. Section 31-58 et seq. (CMWA), arising out of her employment with Defendant ("the Legal Action");

WHEREAS, Defendant denies Culpepper's allegations;

WHEREAS, the Parties engaged in lengthy discovery, including depositions and the exchange of documents such as payroll documents, personnel files, paystubs, time cards, timekeeping records, login/logout data, and corporate policy documents;

WHEREAS, the Court granted Culpepper's Motion for Conditional Certification under the FLSA;

WHEREAS, with the assistance of a third-party claims administrator, the Parties sent court-approved notice to the certified collective;

WHEREAS, the Opt-in Plaintiffs filed consents to join this action;

WHEREAS, the Parties thereafter engaged in arms-length negotiations resulting in resolution of the instant matter;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as defined below) that Culpeper and the Opt-in Plaintiffs have or may have against the Released Parties;

WHEREAS, the Parties' respective counsel have analyzed and evaluated the merits of Plaintiffs' claims and Defendant's defenses to those claims, and based upon that analysis and evaluation, and recognizing the substantial risks of continued litigation, the Parties are satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate, and that this Agreement is in the Parties' best interest;

NOW THEREFORE, the Parties, intending to be legally bound, and in consideration of the mutual covenants and promises set forth in this Agreement, agree as follows:

## AGREEMENT

**1. DEFINITIONS**   The terms set forth below shall be defined as follows:

**1.1.** <u>**Agreement**</u>.   The "Agreement" refers to this Settlement Agreement and any attachments to it.

**1.2.** <u>**Defendant**</u>. "Defendant" means Bank of America, N.A.

**1.3.** <u>**Negotiated Settlement Payment.**</u> "Negotiated Settlement Payment" means the One Hundred and Ninety Thousand and no/100 Dollars ($190,000.00) Defendant agrees to pay to settle Culpepper's and the Opt-in Plaintiffs' claims.

**1.4.** <u>**Parties.**</u> "Parties" means and refers to Plaintiffs and Defendant, collectively.

**1.5.** <u>**Released Claims**</u>.

a.  "Released Claims" means all claims, demands, rights, liabilities, and causes of action that were asserted in the Lawsuit and any additional wage and hour claims that could have been brought based on the facts alleged in the Lawsuit.  The released claims include all claims related to or arising out of the time allegedly worked by Culpepper and/or the Opt-in Plaintiffs while employed by Defendant.  The released claims include, but are not limited to, all claims relating to the alleged failure to pay wages, the alleged failure to pay overtime, the alleged failure to pay for all time worked, breach of contract, unjust enrichment, interest, liquidated damages, penalties and attorneys' fees and costs. The released claims include claims for violations of any federal, state, or local statutes, rules, or regulations relating to the alleged failure to pay wages, the alleged failure to pay overtime, the alleged failure to pay for all time worked, unjust enrichment, interest, liquidated damages, penalties, and attorneys' fees and costs. This includes, but is not limited to, claims that Defendant engaged in conduct subjecting Culpepper and/or the Opt-in Plaintiffs to any statutory or civil penalties or other claims under any statute, ordinance, or otherwise arising from or related to the alleged failure to pay wages or overtime, the alleged failure to pay for all time worked, unjust enrichment, interest, liquidated damages, penalties, and attorneys' fees and costs. The scope of the release includes, but is not limited to, any and all claims arising under federal and state laws governing wages, and wage and hour or wage payment laws, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and/or Conn. Gen. Stat. Sections 31-58 *et seq*. (CMWA), and their implementing regulations, through the date the Court grants approval of the Settlement.

b.  In addition, with respect to Culpepper, "Released Claims" also includes all complaints, claims, lawsuits, claims for relief, demands, suits, arbitrations, actions or causes of action, whether in law or in equity, which Plaintiffs assert or could assert, at common law or under any statute, rule, regulation, order or law, whether federal, state, or local, or on any grounds whatsoever, including without limitation, claims under the Fair Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act (the "ADEA"), Title VII of the Civil Rights Act of 1964, the federal Equal Pay Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993 (the "FMLA"), the Employee Retirement Income Security Act of 1974, the Racketeer Influenced and Corrupt Organizations Act, the Financial Reform Recovery and Enforcement Act of 1989, Section 1981 of Title 42 of the United States Code, the

DocuSign Envelope ID: EA8B382F-49A7-417F-97A6-2B3516B75E8F

federal Worker Adjustment and Retraining Notification (WARN) Act, and any other applicable federal, state, or local laws or regulations concerning workplace rights or obligations or payment of wages, claims for violation of privacy rights, claims for violation of civil rights, claims for denial of equal rights, discrimination, wrongful termination, retaliation, breach of contract, equitable remedies, interference with advantageous relations, all tort claims, and all claims that were or could have been raised by Culpepper in the Lawsuit or which arose prior to the date Culpepper signs this Agreement.

**1.6.** __Released Parties__. "Released Parties" means Bank of America, N.A. and/or any of its current or former owners, directors, officers, shareholders, affiliates, agents, employee benefit plans, plan administrators, representatives, servants, employees, former employees, attorneys, subsidiaries, parents, divisions, branches, units, successors, predecessors, and assigns, including but not limited to Bank of America Corporation, Merrill Lynch & Co. Inc., Merrill Lynch, Pierce, Fenner and Smith Incorporated, and Bank of America, N.A.

## 2. SETTLEMENT PAYMENTS

### 2.1. __Negotiated Settlement Payment and Distribution to Plaintiffs__.

a.       Defendant agrees to pay, as described in Paragraph 2.1(b), the Negotiated Settlement Payment of One Hundred and Ninety Thousand and no/100 Dollars ($190,000.00) for the purpose of settling the Released Claims.

b.       On or before the 21st business day after the later of:  (1) the date Defendant receives a fully-executed copy of this Agreement; and (2) the date Defendant receives a fully completed and executed current Internal Revenue Service ("IRS") Form W-9 for Culpepper, each Opt-in Plaintiff, and Plaintiffs' counsel; and (3) the date the Court enters an Order approving this Settlement Agreement, dismissing the Legal Action, with prejudice, and that Order becomes a final, non-appealable order, Defendant shall deliver to Plaintiffs' counsel the Negotiated Settlement Payment, as follows:

     i.       Two checks each to Culpepper and to each Opt-in Plaintiff as described on Schedule A to the Agreement. The first check will be in the gross amount as described on Schedule A, less required withholding for federal, state, and local taxes.  These payments will be for alleged lost compensation and reported as wage income on IRS Forms W-2 issued to Plaintiffs.  The second check will be for alleged non-economic damages, including liquidated damages, penalties, and interest, and will be reported as non-wage income on IRS Forms 1099 issued to Plaintiffs; and

     ii.      One check made payable to Aileen Culpeper for Seven Thousand Five Hundred and no/100 Dollars ($7,500.00), representing a Class Representative Service Payment.  This payment will be reported as non-wage income on IRS Forms 1099 issued to Culpepper; and

     iii.     One check payable to The Hayber Law Firm, LLC as attorneys for Aileen Culpepper, *et al* for One-Hundred and Six Thousand Eight Hundred and Fifty-Five and 61/100 Dollars ($106,855.61). These payments will be for attorneys'

DocuSign Envelope ID: EA8B382F-49A7-417F-97A6-B03546B75E9F

fees and costs, and will be reported as non-wage income on IRS Form 1099 and/or federal, state or local equivalent forms.

**2.2.** <u>**Taxes**</u>.

a. For tax purposes, the payments to Plaintiffs under Section 2.1(b)(i) shall be allocated as half wages and half liquidated damages and interest.

b. Payments treated as wages pursuant to Section 2.1(b)(i) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and Social Security Number (or Individual Tax Identification Number) on an IRS Form W-2.

c. Payments treated as liquidated damages, penalties, and interest pursuant to Section 2.1(b)(i)-(iii) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and Social Security Number (or Individual Tax Identification Number) on an IRS Form 1099.

d. Plaintiffs acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

e. Plaintiffs accept responsibility for the payment of the employee's share of any income and employment taxes related to these payments. Plaintiffs have had the opportunity to obtain advice from a tax professional. Defendant makes no representations as to the taxability of the consideration provided under this Agreement, and Plaintiffs are not relying on any such representation in deciding to execute this Agreement

**2.3.** <u>**Settlement Approval**</u>.

a. This Agreement will not become effective, and Defendant shall have no obligation to make any payments contemplated by this Agreement, unless signed by all individuals who have consented to join the Legal Action, and the Court enters an Order approving without material modification all of the terms of this Agreement, and dismissing the Legal Action, with prejudice.

b. The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Agreement and shall otherwise use their respective best efforts to obtain Court approval and implement this Agreement. Within 14 days after this Agreement has been signed by all Parties, the Parties shall move the Court jointly for an Order approving the settlement and dismissing the Lawsuit, with prejudice. Plaintiffs' counsel shall prepare the draft motion for approval, and shall provide Defendant's counsel with drafts of the motion for approval, all supporting documentation, and a proposed order at least 5 business days prior to the filing of the motion with the Court, so that Defendant may have a reasonable opportunity to review and provide comments prior to filing with the Court.

c. To the extent permitted by law, the Court shall retain jurisdiction for the purposes of managing and overseeing the settlement and the distribution of funds pursuant thereto.

**2.4.**   **No Effect on Benefit Plans**.  Plaintiffs understand that the settlement payments will not be counted as earnings for purposes of any pension or 401(k) benefits plans, regular or supplemental.

## 3.  RELEASES

**3.1.**   **Claims Released by Plaintiffs.**  In exchange for the Negotiated Settlement Payment set forth in Section 2 of this Agreement, and other valuable consideration set forth elsewhere in this Agreement to which Plaintiffs acknowledge they are not otherwise entitled, Plaintiffs hereby waive, release and forever discharge, and agree that Plaintiffs will not in any manner institute, prosecute or pursue, any Released Claims against any Released Parties.  Plaintiffs agree that, effective the date the Court enters an Order approving the settlement, and by operation of this Agreement, the Court's Order approving the settlement and the Judgment of Dismissal entered pursuant to that approval, they shall be deemed to have waived and relinquished the Released Claims against the Released Parties.

**3.2.**   **No Other Obligations**.  Plaintiffs agree that:  (1) this Agreement shall release Defendant and the Released Parties from liability for the Released Claims to the fullest extent permitted by law; (2) this Agreement is being entered into with the understanding that there are no unresolved claims of any nature that Plaintiffs have against Defendant regarding the Released Claims; (3) except as specified in Paragraph 2, all compensation, benefits, and other obligations due Plaintiffs by Defendant with respect to the Released Claims, whether by contract or by law, have been paid or otherwise satisfied in full, including, but not limited to, payments under any severance plans or programs; and (4) the representations, understandings, and agreements set forth in this Paragraph 3 have been relied upon by Defendant and constitute consideration for Defendant's execution of this Agreement.

**3.3.**   **Non-Admission of Liability.**  By entering into this Agreement, Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs, all such liability being expressly denied.  Rather, Defendant enters into this Agreement to avoid further litigation and to resolve and settle all disputes with Plaintiffs.  The Parties understand and agree that neither this Agreement, nor the negotiations that preceded it, shall be used as evidence with respect to the claims asserted in any other proceeding or dispute whatsoever.

**3.4.**   **Acknowledgement.**  The Parties agree that each provision in this Paragraph 3, without limitation, is a material provision of this Agreement.

## 4.  CONFIDENTIALITY

**4.1.**   The Parties and their counsel agree that, prior to the filing of a motion for approval, they will not issue any press releases or press statements, post any internet disclosures, have any communications with the press or media about this Agreement, or otherwise publicize the terms of this Agreement in any medium, including but not limited to Internet blogs or chat rooms, Facebook, or a law firm website. If counsel for either Party receives an inquiry about settlement from the media, counsel may respond only after the motion for approval has been filed and only by confirming that the matter has been resolved.

**4.2.** Notwithstanding the foregoing, the Parties shall have the right to disclose this Agreement as may be required under federal or state tax and/or securities laws or under generally accepted accounting principles, and may disclose in legal proceedings the terms of this Agreement.

**4.3.** And notwithstanding the foregoing, Plaintiffs understand and acknowledge that nothing in this Agreement prohibits or limits Plaintiffs or their counsel from initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, regarding this Agreement and its underlying facts and circumstances, or any reporting of, investigation into, or proceeding regarding suspected violations of law, and that Plaintiffs are not required to advise or seek permission from Defendant before engaging in any such activity. Plaintiffs recognize that, in connection with any such activity, Plaintiffs must inform such authority that the information Plaintiffs are providing is confidential. Despite the foregoing, Plaintiffs are not permitted to reveal to any third-party, including any governmental, law enforcement, or regulatory authority, information Plaintiffs came to learn during the alleged course of employment with Defendant that is protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, attorney work-product doctrine and/or other applicable legal privileges. Defendant does not waive any applicable privileges or the right to continue to protect their privileged attorney-client information, attorney work-product, and other privileged information. Additionally, Plaintiffs recognize that their ability to disclose information may be limited or prohibited by applicable law and the Defendant does not consent to disclosures that would violate applicable law. Such applicable laws include, without limitation, laws and regulations restricting disclosure of confidential supervisory information or disclosures subject to the Bank Secrecy Act (31 U.S.C. §§ 5311-5330), including information that would reveal the existence or contemplated filing of a suspicious activity report.

## 5. ADDITIONAL PROVISIONS

**5.1.** **Binding Effect.** This Agreement shall inure to the benefit of the Parties and shall be binding upon each of the Parties and their assigns, successors, heirs, and representatives.

**5.2.** **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated the terms and conditions of this Agreement at arm's length, through authorized counsel. No term of this Agreement will be construed against either Party, as this entire Agreement is the result of arm's-length negotiations between the Parties. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

**5.3.** **Fair and Reasonable Settlement.** The Parties agree that this Agreement and the payments called for by this Agreement are fair and reasonable to all Parties, and that those payments and the other terms of this Agreement constitute a fair and reasonable settlement of the Released Claims. The Parties also agree that there was no undue influence, duress, overreaching, collusion or intimidation in reaching this Agreement, and that both Parties have sought and received the advice of competent counsel as to the meaning and effect of each of the terms of this Agreement before agreeing to sign it.

**5.4.** **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.5.** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the North Carolina, without regard to its choice of law principles, to create a full and complete settlement and waiver of claims. To the extent that the law of the United States governs any matter set forth herein, such Federal law shall govern and shall create a full and complete settlement and waiver of claims, as set forth herein (as well as the above Recitals, which have been incorporated fully).

**5.6.** **Amendment.** This Agreement may not be changed orally; it may only be changed by a writing executed by the Parties. Defendant's failure to enforce any provisions of this Agreement will not constitute waiver of its rights under this Agreement.

**5.7.** **Effective Date.** This Agreement shall become effective following its execution by the Parties, and its approval by the Court.

**5.8.** **Attorney's Fees and Costs.** Except as expressly provided in this Agreement, neither Plaintiffs nor Defendant are a prevailing party in this matter. Except as expressly provided in this Agreement, each party also will bear its own attorney's fees and costs, and each party agrees that, unless otherwise specified, it will not seek from the other reimbursement for attorney's fees and/or costs incurred in relation to any matters addressed in this Agreement.

**5.9.** **Assignments.** Plaintiffs represent and warrant that they have not assigned or transferred to any person or entity any of their rights which are or could be covered by this Agreement, including, but not limited to, any covenant not to sue and the waivers and releases contained in this Agreement.

**5.10.** **Severability.** If any provision of this Agreement is determined by a court of competent jurisdiction to be unenforceable, then when possible, consistent with the purpose of this Agreement, any such invalid provision may be reformed, and as reformed, enforced.

**5.11.** **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed as an original, but all of which shall constitute one and the same instrument. Signature pages may be executed by "wet" signature (*i.e.*, using pen and paper) or electronic signature (*e.g.*, via DocuSign). The executed signature pages may be delivered using facsimile or electronic means, including pdf or similar file type transmitted via email, cloud-based server, or e-signature technology.

**5.12.** **Entire Agreement.** Neither party is relying upon any representation, understanding, undertaking, or agreement relating to the subject matter of this Agreement which is not set forth in this Agreement, and each party expressly disclaims any reliance on any such representation, understanding, undertaking, or agreement. This Agreement constitutes the entire Agreement between the Parties. All prior and contemporaneous negotiations and understandings between the Parties regarding the subject matter herein shall be deemed merged into and superseded by this Agreement. Notwithstanding the foregoing, nothing in this Agreement or this paragraph shall negate or otherwise limit Plaintiffs' confidentiality, restrictive covenant, or other post-employment obligations, if any.

IN WITNESS WHEREOF, the Parties hereto knowingly and voluntarily executed this Agreement as of the date(s) set forth below:

**PLAINTIFFS:**

_____
Aileen Culpepper

Date:_____10/1/19_____

DocuSign Envelope ID: EA8B3825-4677-417F-87A6-8335483B75E9F

DocuSigned by:

_Linda Alex_
759FCD28428C42A...

Linda Marie Alex

Date: 8/12/2019

Aileen Berrios-Ramos

Date: 8/12/2019

Michelle Bertolino

Date: 8/20/2019

Mary Ellen Cardello

DC6B2A30CC8F4E5...

Mary Ellen Cardello

Date: 9/1/2019

DocuSigned by:

_Matthew Ericksen_

8A3A845B0F07444...
_____
Matthew L. Ericksen

Date: 8/12/2019
_____

Rhonda Dee Gomme

Date: 10/3/19

DocuSigned by:

*Cheryl Izzo*

5F77D519DCF34B2...

Cheryl L. Izzo

Date: 8/13/2019

DocuSigned by:

7826D044D87342B...

Suzanne Kelly

Date: 8/12/2019

Brenda Lambo

Brenda Lambo

Date: 8/12/2019

DocuSigned by:

Deborah Levesque

49321BE96F394CD...

Deborah Levesque

Date: 8/30/2019

DocuSign Envelope ID: 855D7677-0F30-44B4-A938-797FD11522B5

Florence Crinejo Marshalek

Date: 8/12/2019

DocuSign Envelope ID: 3DD31D3A-21F3-4957-829A-5867ADC86555

Marilynn Martin

Date: 8/14/2019

DocuSigned by:

—03952938E69D4A9...

Andrea Morgan

Date: 8/12/2019

DocuSigned by:

*Natalia A. Ortiz*

1B49CBA26D1A4E4...

Natalia A. Ortiz

Date: 8/12/2019

Nancy L. Reilly

Date: 8/12/2019

Yamil Rivera

Date: 8/12/2019

Sarena Salmeri

Date: 8/7/19

Michael Weed

Date: 8/12/2019

DocuSigned by:

*Patricia Wilson*

Patricia Wilson

Date: 8/30/2019

ACKNOWLEDGED AND AGREED:


By: _____
       On Behalf of Bank of America, N.A.


Title: _____


Dated: _____

ACKNOWLEDGED AND AGREED:


By: _____
      On Behalf of Bank of America, N.A.


Title: SUP. Assistant General Counsel


Dated: 10/10/19

## SETTLEMENT AGREEMENT

### SCHEDULE A

| | **Plaintiff** | **W-2 Check** | **1099 Check** | **Total** |
|---|---|---|---|---|
| 1. | Linda Marie Alex | $3,287.51 | $3287.50 | $6,575.01 |
| 2. | Aileen Berrios-Ramos | $2,103.75 | $2,103.75 | $4,207.50 |
| 3. | Michelle Bertolino | $726.98 | $726.97 | $1,453.95 |
| 4. | Mary Ellen Cardello | $4,114.26 | $4,114.25 | $8,228.51 |
| 5. | Aileen Culpepper | $975.90 | $975.89 | $1,951.79 |
| 6. | Matthew L. Ericksen | $2,061.26 | $2,061.25 | $4,122.51 |
| 7. | Rhonda Dee Gomme | $4,234.62 | $4,234.62 | $8,469.24 |
| 8. | Cheryl L. Izzo | $390.57 | $390.56 | $781.13 |
| 9. | Suzanne Kelly | $4,485.54 | $4,485.53 | $8,971.07 |
| 10. | Brenda Lambo | $1,547.98 | $1,547.98 | $3,095.96 |
| 11. | Deborah Levesque | $3,240.14 | $3,240.14 | $6,480.28 |
| 12. | Florence Crinejo Marshalek | $420.00 | $420.00 | $840.00 |
| 13. | Marilynn Martin | $1,941.19 | $1,941.19 | $3,882.38 |
| 14. | Andrea Morgan | $772.92 | $772.91 | $1,545.83 |
| 15. | Natalia A. Ortiz | $1,024.27 | $1,024.27 | $2,048.54 |
| 16. | Nancy L. Reilly | $481.39 | $481.39 | $962.78 |
| 17. | Yamil Rivera | $3,614.63 | $3,614.62 | $7,229.25 |
| 18. | Sarena Salmeri | $975.38 | $975.37 | $1,950.75 |
| 19. | Michael Weed | $936.59 | $936.58 | $1,873.17 |
| 20. | Patricia Wilson | $487.37 | $487.37 | $974.74 |