UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AILEEN CULPEPPER, *individually and on behalf of all other similarly situated individuals*,<br>      *Plaintiffs*,<br><br>v.<br><br>BANK OF AMERICA, NATIONAL ASS'N,<br>      *Defendant.* | No. 3:17-cv-264 (VAB) |

**RULING AND ORDER ON MOTION TO APPROVE SETTLEMENT**

On February 16, 2017, Aileen Culpepper filed a class action Complaint against Bank of America, National Association ("Bank of America" or "Defendant"), under the Fair Labor Standards Act (FLSA). Ms. Culpepper, a customer service agent known as an Inbound Specialist at Bank of America's Farmington, Connecticut, call center, alleged that the call center had a policy or practice of failing to pay Inbound Specialists who reported to work early to perform necessary pre-shift work.

The parties have agreed on a settlement in this case, and Ms. Culpepper has moved for the Court to approve the proposed settlement as required under the FLSA.

For the reasons stated below, the motion to approve the parties' settlement is **APPROVED**.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Familiarity with the factual background in this case is assumed. *See* Ruling and Order, ECF No. 105 (Jan. 28, 2019).

On February 16, 2017, Aileen Culpepper ("Plaintiff") filed a class action Complaint against Bank of America under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

1

and Rule 23 of the Federal Rules of Civil Procedure, asserting violations of the Connecticut Minimum Wage Act, Conn Gen. Stat. § 31-58 *et seq*. Compl., ECF No. 1 (Feb. 16, 2017).

Ms. Culpepper, customer service agent known as an Inbound Specialist, had responsibility for answering customer calls at Bank of America's Farmington, Connecticut, call center. *Id*. ¶¶ 1, 17, 25. She and other Inbound Specialists alleged that the Farmington, Connecticut, Bank of America call center had a policy or practice of failing to pay Inbound Specialists who reported to work early to perform necessary pre-shift work, such as reviewing policy updates and launching their computer systems. *Id*. ¶ 3.

On January 28, 2019, the Court granted the Plaintiff's motion for conditional class certification under § 216(b) of the FLSA. Ruling and Order, ECF No. 105 (Jan. 28, 2019).

By February 22, 2019, the Court required Ms. Culpepper to send written notice of the certified collective to all individuals who have worked for Bank of America as Inbound Specialists during the period from July 3, 2014 to September 27, 2019. *Id.* at 35. The Court set a notice period of sixty (60) days from February 22, 2019, during which time any potential opt-in plaintiffs would have to submit consent forms to join the lawsuit. *Id.* at 36. The Court decided not to rule on Ms. Culpepper's Rule 23 motion for class certification given the limited record before the Court at that time, but permitted Ms. Culpepper to file a renewed motion for Rule 23 certification following a second phase of discovery. *Id.* at 38.

At the time of the Court's ruling on Ms. Culpepper's motion for conditional class certification, Sarena Salmeri and Michael Weed had already opted in to a potential class action. *Id.* at 33, 43. Sixteen additional employees filed consent forms to opt in to the class action during the sixty-day notice period. *See* ECF No. 107 (Feb. 28, 2019) (consent forms from Linda Marie Alex, Matthew L. Ericksen, Natalia A. Ortiz); ECF No. 108 (Mar. 1, 2019) (consent form

from Florence Crinejo Marshalek); ECF No. 109 (Mar. 12, 2019) (consent forms from Michelle Bertolino, Rhonda Dee Gomme, Nancy L. Reilly); ECF No. 110 (Apr. 2, 2019) (consent forms from Mary Ellen Cardello, Suzanne Kelly, Patricia Wilson); ECF No. 111 (Apr. 5, 2019) (consent form from Yamil Rivera); ECF No. 112 (Apr. 9, 2019) (consent form from Marilynn Martin); ECF No. 113 (Apr. 12, 2019) (consent form from Deborah Levesque); ECF No. 114 (Apr. 17, 2019) (consent form from Cheryl L. Izzo); ECF No. 115 (Apr. 23, 2019) (consent form from Andrea Morgan); ECF No. 116 (Apr. 24, 2019) (consent form from Brenda Lambo, signed Apr. 23, 2019). On July 31, 2019, one additional plaintiff joined the lawsuit with the Defendant's consent to submit an opt-in consent form after the sixty-day deadline. *See* ECF No. 117 (July 31, 2019) (consent form from Aileen Berrios-Ramos and email consent from Defendant).

On October 11, 2019, Ms. Culpepper filed an unopposed motion for the Court to approve a settlement agreement among Bank of America, Ms. Culpepper, and the nineteen additional individuals who opted in to the lawsuit (collectively, "Opt-ins"). Mot. for Approval of Collective Action Settlement, ECF No. 120 (Oct. 11, 2019). Ms. Culpepper submitted a memorandum of law as well as the proposed settlement agreement in support of her motion. Pl.'s Mem. in Supp. of Mot. for Approval of Collective Action Settlement, ECF No. 120-1 (Oct. 11, 2019) ("Pl.'s Mem."); Settlement Agreement, ECF No. 120-2 (Oct. 11, 2019).

The Court held a telephonic status conference to discuss the proposed settlement on December 6, 2019, during which the Court informed the parties that they could supplement the record until December 13, 2019. Minute Entry, ECF No. 123 (Dec. 6, 2019).

On December 13, 2019, Ms. Culpepper filed a supplemental Memorandum of Agreement agreeing to strike the general release in Paragraph 1.5.b from the agreement, Suppl. Mem. of

Agreement, ECF No. 124-1 (Dec. 13, 2019); and a supplemental affidavit providing further information supporting the Plaintiff's attorneys' fees request, Suppl. Affidavit, ECF No. 124-2 (Dec. 13, 2019). Plaintiff's counsel stated that they could provide detailed billing records to the Court for *in camera* inspection if necessary. *Id.* at 2.

On December 16, 2019, the Court entered an order stating that "counsel for Plaintiffs may provide for in camera review '[a] true and accurate copy of the 46 pages of bills reflecting [the] firm's work in this case from February 1, 2017 through August 30, 2019'" by December 18, 2019. Order, ECF No. 125 (Dec. 16, 2019).

Plaintiff's counsel subsequently submitted their billing records for *in camera* review. Notice of Mailing Billing Records, ECF No. 126 (Dec. 16, 2019).

## II.   STANDARD OF REVIEW

The Fair Labor Standards Act "is a uniquely protective statute." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015). In light of these protections, courts in the Second Circuit are required to approve settlement agreements where the parties seek dismissal with prejudice of FLSA claims. *Id.* at 206 ("Thus, Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect.").

In *Cheeks*, while the Second Circuit did not adopt a precise test, the court did refer to several different, non-exclusive factors previously used in evaluating settlement agreements by district courts. *See Cheeks,* 796 F.3d. at 206 (noting that district courts have examined FLSA settlements to determine if the release provision is overly broad, the settlement includes an overly restrictive non-disparagement clause, and whether attorneys' fees are reasonable).

> In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances,

> including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Romero et al v. Fluff N Fold Laundry Services LLC et al.*, No. 15 CIV. 9535 (HBP), 2018 WL 2768642, at *3 (S.D.N.Y. June 8, 2018) (applying five factors and approving FLSA settlement).

## III. DISCUSSION

### A. Proposed Settlement Payments

Under the proposed settlement, Bank of America would pay a total settlement amount of $190,000.00 to the Plaintiffs and their counsel. Settlement Agreement at 3. The $190,000 represents a total of (a) $75,644.39 to Ms. Culpepper and the Opt-in Plaintiffs, distributed to each Plaintiff as laid out in the proposed schedule of payments, *id.* at 31; (b) $7,500 to Ms. Culpepper as a Class Representative Service Payment; and (c) $106,855.61 to The Hayber Law Firm, LLC as attorneys for the Plaintiffs. *Id.* at 4. "For tax purposes, the payments to Plaintiffs . . . shall be allocated as half wages and half liquidated damages and interest," *id.* at 5, meaning that each Plaintiff would receive two checks:

> The first check will be in the gross amount as described on Schedule A, less required withholding for federal, state, and local taxes. These payments will be for alleged lost compensation and reported as wage income on IRS Forms W-2 issued to Plaintiffs. The second check will be for alleged non-economic damages, including liquidated damages, penalties, and interest, and will be reported as non-wage income on IRS Forms 1099 issued to Plaintiffs;

*id.* at 4. The $7,500 Class Representative Service payment to Ms. Culpepper and the attorney's fees payment "w[ould] be reported as non-wage income on IRS Forms 1099." *Id.* at 4-5.

5

Under the proposed settlement, "[e]ach Opt-in will recover 100% of the back pay and liquidated damages they could have received at trial in this case if Plaintiff and the Opt-ins proved all their FLSA claims." Pl.'s Mem. at 3. Plaintiff argues that the parties negotiated this settlement at arms-length by experienced counsel based on contested litigation and factual discovery. *Id.* at 9. Plaintiff's attorney, Richard E. Hayber, "is considered a leading attorney in wage and hour class action litigation, having successfully litigated many such cases." *Id.* (citing *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) ("[The Hayber Law Firm consists of] experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions.")).

Plaintiff also asserts that this settlement takes into account the risks of continued litigation—including the potential decertification of the collective here at a later stage of the case. *Id.* at 8.

After reviewing the proposed settlement, and based on the parties' representations, the Court finds that the settlement was negotiated at arm's length and that there was no fraud or collusion. The Court finds further that the proposed sums to be paid to Ms. Culpepper and the Opt-in Plaintiffs are fair and reasonable, since they represent 100% of what the Plaintiffs could have recovered at trial.

Additionally, based on Plaintiff's counsel's supplemental submissions of an affidavit and billing records, the Court finds that the parties' proposed attorneys' fees and costs payment is reasonable. "In the Second Circuit, courts may calculate attorneys' fees under one of two methodologies: the 'lodestar' method or the 'percentage of the fund' method." *Aguirre v. Torino Pizza, Inc.*, No. 18-cv-2004 (KMK), 2019 WL 126059, at *4 (S.D.N.Y. Jan. 8, 2019) (citing

*McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010)) (evaluating attorneys' fees in a proposed settlement agreement under the FLSA).

"Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund." *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2015 WL 4006896, at *3 (S.D.N.Y. July 1, 2015). "Courts routinely award attorneys in FLSA settlements one-third of the total recovery in fees." *Aguirre*, 2019 WL 126059, at *4 (collecting cases). Plaintiffs may also recover attorneys' fees even where those fees amount to a substantial percentage of the overall award, since "the whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery." *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013) (emphasis in the original) (holding, in an FLSA case, that "the district court did not abuse its discretion by awarding attorney's fees in an amount exceeding one-third of the settlement's pecuniary value"); *see also Lassen v. Hoyt Livery, Inc.*, No. 3:13-cv-01529 (VAB), ECF No. 201, at 4 (D. Conn. June 5, 2017) (approving an attorneys' award constituting 59.7% of a FLSA settlement fund).

"While a court can award attorney's fees based on either the lodestar calculation—the hourly rate times the number of hours worked—or a percentage of the settlement award, 'counsel must provide a factual basis for a fee award, typically with contemporaneous time records.'" *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019) (quoting *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014)); *see also Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2019 WL 117466, at *5 (S.D.N.Y. Jan. 7, 2019) ("Even where attorneys' fees are sought pursuant to the percentage of the fund method, 'counsel must submit evidence providing a factual basis for the award.'" (quoting *Wolinsky*, 900 F. Supp. 2d at 336)). A factual basis for a fee award could therefore

7

include "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015). The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

> Courts draw on the following considerations—commonly known as the 'Goldberger factors'—when assessing the reasonableness of attorneys' fees: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Aguirre*, 2019 WL 126059, at *4 (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (alteration and internal quotation marks omitted). Even in cases where plaintiffs' counsel seek the standard one-third contingency fee, courts must still assess the reasonableness of proposed fees. *See, e.g.*, *Lizondro* 2015 WL 4006896, at *4 (applying the Goldberger factors where plaintiffs' counsel sought one third of the settlement fund as attorney's fees). When the lodestar is "used as a mere cross-check to a percentage fee calculation, however, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012) (summary order) (quoting *Goldberger*, 209 F.3d at 50 (internal quotation marks omitted)).

Attorneys' fees are determined by reference to the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), which "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively," *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted). In

"asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services." *Arbor Hill*, 522 F.3d at 192.

In the Second Circuit, courts calculate a "presumptively reasonable fee" by taking the product of the hours reasonably expended and a reasonable hourly rate that reflects what "a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. Courts enjoy "considerable discretion" in this regard. *Id.* Further, the Supreme Court has held that the rate "prevailing in the community" must be for "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

When analyzing the number of attorney work hours claimed by a plaintiff, courts in the Second Circuit must decide whether the time was "usefully and reasonably expended by counsel." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations omitted). Additionally, fee applicants must submit supporting documents that show contemporaneous records "specific, for each attorney," and with "the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)

To determine the hourly rate, courts should examine three factors: (1) the experience of the attorney, (2) the nature of the case as it relates to the reasonableness of the rate, *Parris v. Pappas*, 844 F. Supp. 2d 262, 266–67 (2012), and (3) the rates "prevailing in the community for similar services." *Sony Electronics, Inc. v. Soundview Techs., Inc.*, 389 F. Supp. 2d 443, 447 (D. Conn. 2005). Courts in the District of Connecticut generally consider prevailing market rates to be billing rates within the District of Connecticut. *See Lavatec Laundry Tech. GmbH v. Voss*

*Laundry Sols.*, No. 3:13-cv-00056 (SRU), 2018 WL 2426655, at *15 (D. Conn. Jan. 9, 2018) (internal citations omitted).

Ms. Culpepper's counsel represented her on a contingency basis rather than based on an hourly fee. Pl.'s Mem. at 11. The proposed settlement agreement provides for $106,855.61 in attorneys' fees, "which represents a reduction from [the Plaintiff's attorneys'] full lodestar figure of $165,551.00 in fees and $5,827.56 in costs." *Id.* at 4. This amount constitutes 56.2% of the total settlement fund. *Id.* at 10. Plaintiffs argue that "attorneys' fees in fee-shifting cases need not be proportional to the amount recovered," and that "[o]ther courts in this District have approved similar attorneys' fees awards in other FLSA cases." *Id.* at 10 (citing *Lassen*, No. 3:13-cv-01529 (VAB), ECF No. 201, at 4 (approving an attorneys' award of up to $400,000 out of a $670,000 settlement fund, or 59.7%)).

Ms. Culpepper's counsel have submitted records showing contemporaneous records for each attorney who worked on the case with the date, the hours expended, and the nature of the work done. *See* Notice of Mailing Billing Records. These records showed that six attorneys and three paralegals billed a total of $165,566.50 for 531.6 hours of work. *See* Suppl. Affidavit at 7 (summarizing the records provided *in camera*). The individual attorneys' rates included $500 per hour for three attorneys, $400 per hour for one attorney,[1] $350 per hour for one attorney, and $300 per hour for one attorney. *Id.* at 8. The three paralegals' rates ranged from $75 to $130 per hour for a total of 96.2 hours of work. *Id.* Additionally, counsel billed $5,827.56 for costs relating to this case, bringing their total fees and costs to $171,394.06. *Id.* at 7. Plaintiff's

---

[1] Listing each attorney's individual billing rates, the supplemental Affidavit states that one attorney billed "$xxx for the 6.4 hours he billed to this file." Suppl. Affidavit 8. The Court calculates this attorney's rate as $400 per hour based on the records submitted *in camera*.

10

counsel seek $106,855.61 in attorneys' fees under the proposed settlement agreement, or "approximately 62.3% of their lodestar and costs." *Id.*

Courts in this District have routinely awarded attorneys' fees in FLSA cases around $300-$350 per hour. *See, e.g.*, *Fuk Lin Pau v. Jian Le Chen*, No. 3:14-cv-841 (JBA), 2015 WL 8490907, at *2 (D. Conn. Dec. 10, 2015) (awarding $350 per hour in attorneys' fees where counsel "ha[d] practiced law for almost ten years, during which time he has devoted about 70% of his practice to employment-related cases"); *Tapia v. Mateo*, 96 F. Supp. 3d 1, 6-7 (D. Conn. 2015) (awarding $300 per hour to "an experienced litigator in the area of federal wage and hour cases"); *Wellington v. Duncan*, No. 3:13-cv-1179 at *3 (JBA) (D. Conn. July 2, 2014) (approving $300 hourly rate for plaintiffs' counsel in a FLSA and CMWA case); *Morales v. Cancun Charlie's Rest.*, No. 3:07-cv-1836 (CFD), 2010 WL 7865081, at *9 (D. Conn. Nov. 23, 2010) (approving hourly rate of $350 for law clinic supervisor); *Perez v. By Your Side Homemaker*, No. 3:08-cv-602, 2009 WL 1858263, at *11 (D. Conn. Jun. 25, 2009) (same).

The highest hourly attorneys' fee ever awarded in a published Connecticut case appears to be $535.50 per hour for two named partners of a New York City law firm in a complex and lengthy trademark case where the prevailing litigant made a "reasonable decision to hire specialized out-of-district counsel," *Lavatec Laundry Tech. GmbH*, 2018 WL 2426655, at *16; and where the named partner primarily involved had "approximately 29 years of experience" and specialized in trademark law, John Greene Decl., ECF No. 245-4, *Lavatec Laundry Tech. GmbH*, No. 3:13-cv-56 (SRU) (D. Conn. Mar. 24, 2017). In 2013, another court in this District awarded $525 per hour for an attorney who was "a leading specialist in the law governing railroad employees' rights, and [where] his longstanding and highly developed practice ma[de] him more efficient, creative, and effective . . . than an attorney of similar trial experience."

11

*Barati v. Metro-North R.R. Co.*, 939 F. Supp. 2d 153, 156 (D. Conn. 2013) (as cited in *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (SRU), 2017 WL 4679228, at *8 (D. Conn. Oct. 18, 2017)). More recently, another court awarded $450 per hour to a prevailing plaintiff's attorney with more than forty years of experience who had litigated numerous similar special education civil rights cases, noting that in this case "[s]ubstantial skill was required to navigate this increasingly fact-intensive case through its various stages." *A. v. Hartford Bd. of Educ.*, No. 3:11-cv-01381 (GWC), 2017 WL 187138, at *4-7 (D. Conn. Jan. 17, 2017).

      Plaintiff's counsel have provided limited information regarding the attorneys' experience. They mention that Richard E. Hayber, presumably the named partner of Hayber Law Firm, "is considered a leading attorney in wage and hour class action litigation, having successfully litigated many such cases." Pl.'s Mem. at 9 (citing *Aros v. United Rentals, Inc.*, No. 3:10-cv-73 (JCH), 2012 WL 3060470, at *6 (D. Conn. July 26, 2012) ("[The Hayber Law Firm consists of] experienced employment lawyers with good reputations among the employment law bar. They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions.")). They also mention that Attorney Durkin, whose billed hourly rate was $300 per hour, is "an associate with . . . little more than three years" of experience. Suppl. Affidavit at 8. The Court does not know what levels of experience the other attorneys have and therefore cannot assess whether the hourly fees requested for those attorneys are reasonable or not.

      Plaintiff's attorneys, however, seek only 62.3% of the fees and costs they billed. Suppl. Affidavit at 7. As applied to each individual attorney, the highest billing attorneys thus only seek approximately $311.50 per hour, and the lowest billing attorney seeks only about $186.90 per hour. Since awards of between $300 and $350 are common in FLSA cases in this District and

well below the highest rates awarded under fee-shifting statutes, the Court finds that, in this case, it does not need further information about Plaintiff's attorneys' experience to determine the reasonableness of individual billing rates. *See Cassese*, 503 F. App'x at 59 (When the lodestar is "used as a mere cross-check to a percentage fee calculation, the hours documented by counsel need not be exhaustively scrutinized by the district court.")

Additionally, while "purely clerical or secretarial tasks should not be billed under fee shifting statutes," *Durso v. Colvin*, No. 314-cv-67 (WWE) (JGM), 2015 WL 5684039, at *3 (D. Conn. Sept. 28, 2015) (internal citations omitted), attorneys' fees have been granted for work by paralegals where plaintiffs demonstrate the paralegals' active participation in the substance of the litigation. *See, e.g.*, *Serricchio v. Wachovia Sec.*, LLC, 706 F. Supp. 2d 237, 260 (D. Conn. 2010), *aff'd*, 658 F.3d 169 (2d Cir. 2011) ("Because [the paralegal] did not 'sit[ ] idly' as [d]efendant's counsel suggest, but rather, is represented to have played the supportive role for Plaintiff's counsel during trial, which warrants fees, her hours spent in trial will be awarded in full."). Here, the billing records provided by Plaintiff's counsel *in camera* show that the work performed by paralegals was substantive, not merely clerical. Additionally, their rates of between $75-$130 are reasonable in this District, even before reducing them to 62.3%. *See A. v. Hartford Bd. of Educ.*, No. 3:11-CV-01381-GWC, 2017 WL 187138, at *7 (D. Conn. Jan. 17, 2017) (awarding $140 per hour for paralegal work); *Doe*, 2015 WL 8770003, at *6 (same); *Crawford v. City of New London*, No. 3:11-cv-1371 (JBA), 2015 WL 1125491, at *6 (D. Conn. Mar. 12, 2015) (same).

The Court therefore finds that the attorneys' fees agreed to in the proposed settlement agreement are reasonable.

### B. Release of Claims

When scrutinizing FLSA settlements, courts will generally not approve settlement agreements containing release from liability provisions that are overly broad. *See Batres v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 15, 2016) ("Relevant here, courts decline to approve FLSA settlements that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues. Indeed, courts in the Second Circuit have observed that broad releases are doubly problematic in the FLSA context, where courts have a duty to police unequal bargaining power between employees and employers." (internal quotation marks omitted)).

Under the parties' proposed settlement agreement, Ms. Culpepper and the Opt-ins agree to release all claims against Bank of America "related to or arising out of the time allegedly worked by Culpepper and/or the Opt-in Plaintiffs while employed by Defendant." Settlement Agreement at 3. "'Released Claims' means all claims, demands, rights, liabilities, and causes of action that were asserted in th[is l]awsuit and any additional wage and hour claims that could have been brought based on the facts alleged in th[is l]awsuit." *Id.*

Originally, the proposed settlement included an additional paragraph under which Ms. Culpepper would have agreed to release claims more broadly. *Id.* at 3-4. After the Court expressed concerns about this broad general release during the status conference on December 6, 2019, however, the parties agreed to strike Paragraph 1.5.b, the broad release provision regarding Ms. Culpepper. Suppl. Mem. of Agreement at 2.

The parties agree that the proposed settlement would only bind those individuals who opted into the case. Pl.'s Mem. at 2.

14

Where a "settlement states that Plaintiff releases Defendants from a number of enumerated claims arising from the employment relationship, including on-the-job injuries and discrimination claims," claims that "have no relationship whatsoever to wage-and-hour issues," the "release from liability provided by the proposed settlement" will likely be "too broad." *Lopez v. Ploy Dee, Inc.*, No. 15-CV-647 (AJN), 2016 WL 3637103, at *1 (S.D.N.Y. June 29, 2016) (internal quotation marks omitted). FLSA settlement agreements cannot waive "practically any possible claim against the defendants." *Camacho v. Ess-A-Bagel, Inc.*, No. 14 Civ. 2592 (LAK), 2015 WL 129723, at *1 (S.D.N.Y. Jan. 9, 2015); *see also Mahalick v. PQ New York Inc.*, No. 14 CIV. 899 WHP, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) ("'[A]n employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.'") (quoting *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)).

Because the parties' proposed settlement, having stricken Paragraph 1.5.b, releases Bank of America only from "wage and hour claims that could have been brought based on the facts alleged in th[is l]awsuit," Settlement Agreement at 3, the Court finds that the waiver provision is not overly broad. *See Cheeks*, 796 F.3d at 206 (recognizing that "the unique policy considerations underlying the FLSA" and the "statute's remedial and humanitarian goals" could be hampered by "an overbroad release that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" (internal quotation marks omitted)).

### C. Confidentiality Provision

The confidentiality provision in the Settlement Agreement governs Ms. Culpepper, the Opt-in Plaintiffs, Bank of America, and all parties' counsel. Settlement Agreement at 2, 26. It provides that,

> prior to the filing of a motion for approval, they will not issue any press releases or press statements, post any internet disclosures, have any communications with the press or media about this Agreement, or otherwise publicize the terms of this Agreement in any medium, including but not limited to Internet blogs or chat rooms, Facebook, or a law firm website. If counsel for either Party receives an inquiry about settlement from the media, counsel may respond only after the motion for approval has been filed and only by confirming that the matter has been resolved.

*Id.* at 26.

Courts are reluctant to approve FLSA settlements that include confidentiality provisions, particularly ones that prevent the settling plaintiff from "directly or indirectly encourag[ing], induc[ing], solicit[ing] or assist[ing] anyone to file a wage and hour action or collective or class action against Defendants," which can be "contrary to public policy because they prevent the spread of information about FLSA actions to other workers . . . who can then use that information to vindicate their statutory rights." *Lopez*, 2016 WL 3637103, at *1 (internal quotation marks omitted). As the Second Circuit has noted, "a battery of highly restrictive confidentiality provisions" is "in strong tension with the remedial purposes of the FLSA." *Cheeks*, 796 F.3d at 206.

The Court finds that the provision, as written, only restricts the Plaintiffs from discussing the settlement before its approval by this Court. It does not prohibit Ms. Culpepper or the Opt-in Plaintiffs from subsequently publicly discussing the settlement amounts they received under the proposed agreement.[2]

---

[2] As the parties noted during the status conference held on December 6, 2019, the dollar amounts awarded to each Plaintiff are now a matter of public record as set forth in the proposed settlement, and as such the parties would be hard pressed to deny Plaintiffs the ability to disclose those amounts themselves. *See* Settlement Agreement at 31.

## IV.     CONCLUSION

For the previously stated reasons, the Court **APPROVES** the Plaintiff's motion to approve the parties' proposed settlement agreement.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of December 2019.

                                         /s/ Victor A. Bolden
                                        VICTOR A. BOLDEN
                                        UNITED STATES DISTRICT JUDGE